CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rafael Arroyo, Jr.**, <br>   Plaintiff, <br>  v. <br> **Hessang, Inc**, a California Corporation; and Does 1-10, <br>   Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

  Plaintiff Rafael Arroyo, Jr. complains of Defendant Hessang, Inc, a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

  **PARTIES:**

  1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility.

  2. Defendant Hessang, Inc owned the real property located at or about 490 W. Anaheim Street, Long Beach, California, in August 2018.

  3. Defendant Hessang, Inc owns the real property located at or about 490 W. Anaheim Street, Long Beach, California, currently.

Complaint


4. Defendant Hessang, Inc owned Magnolia Chevron located at or about 490 W. Anaheim Street, Long Beach, California, in August 2018.

5. Defendant Hessang, Inc owns Magnolia Chevron ("Gas Station") located at or about 490 W. Anaheim Street, Long Beach, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

Complaint

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Gas Station in August 2018 to shop

11. Gas Station is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking is one of the facilities, privileges, and advantages offered by defendants to patrons of the Gas Station.

13. Unfortunately, even though there was a parking space marked and reserved for persons with disabilities in the parking lot at the Gas Station during Plaintiff's visit, the parking space reserved for persons with disabilities was not level. The parking stall and access aisle had cross slopes and running slopes greater than 2.1%.

14. Additionally, the parking space marked and reserved for persons with disabilities was not van accessible.

15. The parking stall measured 105 inches in width while the access aisle measured about 68 inches in width. This is not van accessible.

16. Finally, although there is a sign in front of a parking suggesting that an accessible space once existed, there is no International Symbol of Accessibility logo in a parking space. Adjacent to the parking space there is faded paint that suggests that an access aisle once existed as well. There is no "NO PARKING" warning in the old access aisle.

17. Defendants have no policy in place to make sure that parking space is maintained for use by persons with disabilities.

18. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

19. The walkway leading to the entrance of the Gas Station store had cross slopes of as much as 3.3%.

20. Although there were shelves and merchandise aisles open to customers for shopping, some paths of travel in and throughout these merchandise aisles

Complaint

were not accessible because the defendants had a practice of placing merchandise and merchandise display on the route of travel restricting passage to less than 36 inches in width.

21. In fact, the narrowest pathway was about 26 inches wide.

22. Currently, the walkway leading to the entrance of the Gas Station store has cross slopes of as much as 3.3%.

23. Currently, although there are shelves and merchandise aisles open to customers for shopping, some paths of travel in and throughout these merchandise aisles are not accessible because the defendants have a practice of placing merchandise and merchandise display on the route of travel restricting passage to less than 36 inches in width.

24. Transaction counters are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station store.

25. Although there was a writing surface in front of the transaction counter, transactions must necessarily take place at the top of the transaction counter near the window that separates customer from employee, which is about 40 inches in height.

26. Plaintiff personally encountered these barriers.

27. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

28. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

29. Although the plaintiff did not personally encounter the barrier, the restroom sink does not provide any knee clearance for wheelchair users.

30. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

31. Plaintiff plans to return and patronize the Gas Station but is deterred

Complaint

from visiting until the defendants remove the barriers.

32. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

33. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

34. For example, there are numerous paint/stripe companies that will come and stripe a level parking space and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

35. One common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

36. Plaintiff is deterred from returning and patronizing the Gas Station because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Gas Station as a customer once the barriers are removed.

37. Given the obvious and blatant nature of the violations and barriers alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See

Complaint

*Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

38. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

39. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

  a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

  c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities,

Complaint

including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

40. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

41. Here the failure to provide level parking space is a violation of the law.

42. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, i.e., having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

43. Here, the lack of a van parking space is a violation of the law.

44. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly

Complaint

and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. Id. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. Id. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. Id. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. Id. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. Id. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. Id. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

45. Here, there was no blue border around an access aisle or parking space, there was no "NO PARKING" lettering, no striping, no blue border, no fine language, and the parking simply failed to comply.

46. Nowhere shall the cross slope of an accessible route exceed 2.1%. 1991 Standards §4.3.7. 2010 Standards § 403.3.

47. Here, the slopes along the walkways exceeded the levels allowed by law.

48. Shelves and display units allowing self-service by customers at stores

Complaint

must be located on an accessible route. 1991 Standards § 4.1.3(12)(b). An accessible route must be at least 36 inches in width. 1991 Standards § 4.3.3.

49. Here, the failure to provide accessible paths of travel in and throughout the merchandise aisles is a violation of the law.

50. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

51. Here, no such accessible, compliant transaction counters have been provided at the Gas Station store. This is a violation of the ADA.

52. Sinks must provide knee clearance of at least 29 inches in height. 1991 Standards § 4.19.2 and Figure 31; 2010 Standards § 606.2 and 306.

53. Here, no such knee clearance was provided and this is a violation of the ADA.

54. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

55. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

56. Given its location and options, plaintiff will continue to desire to patronize the Gas Station but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

Complaint

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

57. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

58. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

59. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

60. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

Complaint

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: September 12, 2018     CENTER FOR DISABILITY ACCESS

By: _____

Chris Carson, Esq.
Attorney for plaintiff

Complaint